Drexel v. Reed.

JOHN R. DREXEL ET AL. V. ABRAHAM L. REED ET AL.[*]

JOHN R. DREXEL ET AL. V. ROCHESTER LOAN & BANKING COMPANY.

JOHN R. DREXEL ET AL. V. JULIUS A. PERKINS ET AL.

FILED JUNE 18, 1902.   Nos. 11,755, 11,756, 11,757.

Commissioner's opinion, Department No. 1.

1. Appeal from County Court: REPEAL OF STATUTE. Section 242, chapter 23, Compiled Statutes, 1901, is repealed, in effect, by sections 1 and 2 of act of February 28, 1881, entitled "An act providing for an appeal from the decisions of the county court in certain matters."

2. ———: TRANSCRIPT: DUTY OF JUDGE. Under section 5 of the last-mentioned act, it is the duty of the county judge to transmit to the district court a transcript of his proceedings within ten days after an appeal from an order in probate is perfected.

3. County Judge: PREPAYMENT OF FEES: WAIVER. Under such section the county judge has a right to prepayment of fees, but this right may be waived, and will be, if he has established a regular mode of collecting his fees, which is complied with in the given case.

[*]Rehearing allowed.   Judgment adhered to.

4. **Taking Second Appeal.** Taking a second appeal in a case, does not of itself constitute an abandonment of the first one.

5. **Appeal: PERFECTION: WAIVER: JURISDICTION.** Where a party has, within due time, done all that is legally required to perfect an appeal, and no waiver of transmission of records by county judge is shown, district court does not lose jurisdiction of appeal by reason of its being filed six days late.

PROCEEDINGS in error from the district court for Douglas county. Tried below before SLABAUGH and ESTELLE, JJ. *Reversed.*

*Woolworth & McHugh,* for plaintiffs in error.

*Hall & McCulloch, W. D. Beckett, J. W. Woodrough* and *J. H. McCumber, contra.*

HASTINGS, C.

The records in these cases are identical, except in names. They are all three complaints by the same plaintiffs in error of the dismissal of appeals from orders in probate of the county court of Douglas county, allowing certain claims against the estate of Anthony J. Drexel, deceased. The orders of allowance were entered September 19, 1898. October 3, an order was entered in each case allowing an appeal, and fixing amount of appeal bond at $15,000. Appellants being legatees and strangers to the record, this order was needed. Some question is raised as to whether the application for leave to appeal was sufficient, but there seems no doubt but that, as legatees, they had and showed such a right. On the same day, appeal bonds were filed and approved. Transcripts were ordered on the same day, immediately prepared, and completed by October 10, but were not filed with the clerk of the district court. No fees for the transcripts were demanded, tendered or paid until November 5. October 21 the same application for leave to appeal was refiled, a new bond given, and subsequently new transcripts ordered, showing these additional proceedings. The transcripts were none of them transmitted by the county judge to the district court.

Charles P. Reynolds, clerk for appellants' counsel, swears that on October 25 or 26 he applied for the transcripts for purposes of examination by counsel, and on the same day returned them, asking that the answer of the administrator be included, and urged their immediate completion. He says that he was told that they would be completed at once, and filed with the district clerk, and that this arrangement was made with W. J. Fawcett, clerk of the county court. The transcripts were recertified on November 3, and delivered to Reynolds, and filed by him in the district court November 4, and fees for making them paid on November 5. The county judge says that it was not his practice to demand fees in advance from reputable attorneys, and that the failure to pay fees had nothing to do with any delay in this case. Evidently this is true, as the transcripts were finally delivered and filed without payment of fees. This was done afterwards, as above stated. There are numerous affidavits, however, on the part of the claimants, which render it practically certain that the transcripts were not called for on October 25 or 26 by Mr. Reynolds, but on November 1, and corrections then suggested. They were then corrected and recertified on November 3, as before stated. Mr. Fawcett swears that there was no talk about their transmission to the district court. Another clerk of the county court says that when the transcripts were ordered on October 3, no fees were tendered and nothing said about filing in district court. Mr. Fawcett says that before transcripts were taken out by Mr. Reynolds, claimants' counsel had told him that time for appeal had gone by; that he called Mr. Reynolds's attention to this on his getting the transcripts, November 3, and the latter said that there were two statutes, under one of which there was plenty of time. It appears that two sets of appeals were filed in the district court, the one now under consideration and one based on the proceedings of October 21, before mentioned. November 19, 1898, the claimants objected to the jurisdiction of the district court because the appeals were not taken

within the thirty days, because they were abandoned by the new proceedings of October 21, and because no transcript was filed with the clerk of the district court for more than forty days after the allowance of the claims. Some proceedings relating to the removal of the controversy to the federal courts were had, which seem to call for no attention at this time, and May 23, 1900, the objections were considered; and the district court found (two judges sitting), that "the appeal was taken later than the time fixed by the statute for the taking of appeals from final orders of the probate court, to which finding appellants except, and the court does sustain such objections to its jurisdiction, to which order appellants except." The appeals were then dismissed at appellants' cost, a motion for a new trial overruled, a bill of exceptions settled, and a supersedeas bond of $50,000 required and given in each case.

Counsel for appellants claim there was error in dismissing the appeals, for two reasons: That the filing out of time was a failure in duty of the county judge, and by no fault of appellants, and that section 242 of chapter 23, Compiled Statutes of 1901, allows ten days additional time to one interested in an estate to appeal on its behalf, when the executor or administrator fails to do so.

It is conceded that the act of 1881 (Compiled Statutes, 1901, ch. 20, secs. 42-48), is broad enough in its general terms to include all appeals in matters of probate; but it is urged that it does not, in terms, repeal the other section, and the latter should be held to remain as a special provision for cases of refusal by an executor or administrator to appeal. While it is undoubtedly true that repeals by implication are not favored, it is also true that where the legislature passes a new act, whose terms are distinctly incompatible with those of a previous one, the latter is superseded. The act of 1881 provides that "all appeals [in matters of probate] shall be taken within thirty days after the decision complained of is made." Sec. 43. This has been held to supersede and repeal the special provisions of chapter 23 allowing only ten days to an executor

or administrator to appeal. *Bazzo v. Wallace,* 16 Nebr.,
293; *Malick v. McDermot's Estate,* 25 Nebr., 267; *Davis
v. Davis,* 27 Nebr., 859. The act of 1881 not only provides
that all appeals in probate shall be taken within thirty
days, but that "every party so appealing shall give bond"
(sec. 44), which must be filed within thirty days. It is
true that one exception is made in favor of executors and
administrators, who need no bond at all. It is made, how-
ever, in the act of 1881. It seems clear that this provision
was intended to cover all appeals in probate, and that, in
allowing every one thirty days, it was thought that time
enough had been given to those specially interested on
behalf of the estate, even in cases where the executor or
administrator failed to appeal. An extension of time in
favor of such interested parties was certainly required
when the general limit was ten days. In *Merrick v. Ken-
nedy,* 46 Nebr., 264, confining the right to appeal to "any
person aggrieved" as described in section 304 of chapter
23, that section was held to modify the provisions of the
act of 1881, as being a special provision concerning ap-
peals from final orders of distribution and so not covered
by the general act. It must be admitted that a very
slightly extended application of this doctrine would make
section 242 of the chapter as to decedents modify the pro-
visions of the act of 1881 so far as regards appeals by the
parties interested, where the executor or administrator
refuses. It is not thought, however, that such was the in-
tention of the legislature, or even would have been if the
lawmakers' attention had been called to this especial
matter.

It remains only to decide whether the failure to file
within the time limited is to be charged to the appellants
or to the county judge. Section 5 of the act of 1881 pro-
vides: "When such appeal is taken, the county court shall,
on payment of his fees therefor, transmit to the clerk of
the district court within ten days after perfecting such
appeal, a certified transcript of the record and proceedings
relative to the matter appealed from." Session Laws, ch.

47; Compiled Statutes, ch. 20, sec. 46. This appeal was perfected October 3 by its allowance, and by the filing of a bond, which was approved. It then became the duty of the county judge to transmit the transcript "on payment of his fees therefor." No fees were paid or tendered him. The transcript, however, was expressly ordered, was made, and, as we have seen, was finally delivered without payment of fees. This was under a general practice of the county court in such cases not to ask for fees in advance from reliable attorneys. There is no doubt of the correctness of the county judge's statement that non-payment of fees had nothing to do with this delay. He waived their payment in advance of the service. That he could do so admits of no doubt. The direct reference in the statute to his performing this duty "on payment of his fees therefor," was not intended to place this one on any different footing from other duties, in respect to prepayment of fees. It was evidently inserted only out of abundant caution to preserve the right to demand them. In this case the rights of appellants are the same as if payment had been demanded and made on October 3, when the appeal was perfected and the transcripts ordered. The refiling of the applications for allowance of appeals and filing of new bonds on October 21, is claimed to have been an abandonment of the appeals of October 3. The only showing attempted by the appellees as to this is the bare fact of such action, and the taking of a second set of transcripts, and the eventual filing of both sets in the district court. Probably it would not be permitted to prosecute two appeals from the same order of allowance by the probate court, but no authority is given for the proposition that refiling an application for the allowance of an appeal, of itself, works an abandonment of the former allowance. It seems more reasonable to say that appellants would be compelled to elect between the two proceedings, unless the second was merely supplementary and in continuance of the first. The mere fact of the institution of the second proceedings, which is all that was before the district court or is before

us, would neither prevent jurisdiction in the first appeal, nor excuse the county judge from performing his duty of transmitting the records. In *Van Sant v. Francisco,* 55 Nebr., 650, it is held that reliance upon a custom of the county court to make out and specially deliver the transcript in a civil case was no excuse for a party's not demanding it in time. To deliver the transcript was no duty imposed by law, and, if there was a failure to do so, it was as the party's agent. That was an ordinary civil action. There was no duty of county judge in transmission. The judge could not charge himself, as an officer, with any extra-legal duty. The converse of this is not true. We are not prepared, by any means, to hold that the county judge could not relieve himself of the duty of transmission in probate appeals by an arrangement with the appellant. If the appellants had fairly assumed such task and distinctly arranged to transmit the records, they could not excuse themselves by saying it was the judge's duty. Nothing of the sort appears here. The appellants perfected their appeal in time, came back on the forty-first day and found the appeal not transmitted. They procured transcripts then as soon as possible and filed them. So far as this record shows, they simply relied on the county judge in the matter of transmission. As above stated, something more than a mere procuring of another allowance of appeal is necessary to relieve the judge of this duty, and this is all that appears in these cases. The action of appellants' attorneys on and after November 1, seems to have been energetic enough, but the forty days had then gone by.

We conclude that the appellants had the right to take their appeal, follow the county judge's regular practice as to payment of fees, and rely upon his transmitting the cases when there was plenty of time for him to do so. On his failure to get them to the district court, they could put them in themselves with reasonable promptness, and jurisdiction would not be lost by the judge's failure to transmit them in time. *Cheney v. Buckmaster,* 29 Nebr., 420.

It is recommended that the order of the district court sustaining the objections to its jurisdiction be reversed, and each of said causes remanded for further proceedings.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the order of the district court sustaining the objections to its jurisdiction is reversed, and each of said causes remanded for further proceedings.

REVERSED AND REMANDED.